UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CASSANDRA N. KOCH,

   Plaintiff,      Case No. 5:19-cv-13631
           District Judge Judith E. Levy
v.          Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

   Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 12),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 15) and AFFIRM THE COMMISSIONER'S DECISION**

**I. RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment

(ECF No. 15), and **AFFIRM** the Commissioner's decision.

**II. REPORT**

   Plaintiff, Cassandra N. Koch, brings this action under 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c)(3) for review of a final decision of the Commissioner of

Social Security (Commissioner) denying her applications for Disability Insurance

(DI) benefits and Supplemental Security Income (SSI).  This matter is before the

United States Magistrate Judge for a Report and Recommendation on Plaintiff's

motion for summary judgment (ECF No. 12), the Commissioner's cross-motion for

summary judgment (ECF No. 15), Plaintiff's reply brief (ECF No. 16), and the

administrative record (ECF No. 10).

## A.     Background and Administrative History

Plaintiff alleges her disability began on July 15, 2015, at the age of 32.  (R.

at 211, 215.)  She filed applications for Disability Insurance Benefits (DIB) and

SSI on July 27, 2016, and October 4, 2016, respectively.  (R. at 113-114.)  In her

disability report, she lists undifferentiated connected tissue disease, migraines,

depression, anxiety, and pain as limiting her ability to work.  (R. at 249.)  Her

applications were denied on February 15, 2017.  (R. at 113-114.)

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (R. at

151-153.)  On September 7, 2018, ALJ Sarah Zimmerman held a hearing, at which

Plaintiff and a vocational expert (VE), Annette Holder, testified.  (R. at 33-80.)  On

March 15, 2019, ALJ Zimmerman issued an opinion, which determined that

Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 12-

32.)

Plaintiff submitted a request for review of the hearing decision/order.  (R. at

208-209.)  However, on October 7, 2019, the Appeals Council denied Plaintiff's

2

request for review.  (R. at 1-6.)  Thus, ALJ Zimmerman's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on December 10, 2019.  (ECF No. 1.)

**B.     Plaintiff's Medical History**

The administrative record contains approximately 931 pages of medical records, which were available to the ALJ at the time of her March 15, 2019 decision.  (R. at 358-1289 [Exhibits 1F-11F].)  These materials will be discussed in detail, as necessary, below.

**C.     The Administrative Decision**

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2015, the alleged onset date.  (R. at 18.) At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "'probable' undifferentiated connective tissue autoimmune disorder with positive ANA findings; asthma; attention deficit hyperactivity disorder (ADHD); affective disorder; anxiety; and obesity[.]"  (R. at 19.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (R. at 19-21.)

**Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's

residual functional capacity (RFC)[1] and determined that Plaintiff had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and
> 416.967(a), except she can lift and/or carry no more than 10 pounds at
> a time and can occasionally lift and/or carry articles such as docket
> files, ledgers, and small tools.  The claimant is able to stand and/or
> walk for two hours during an eight-hour workday.  The claimant can
> sit for eight hours during an eight-hour workday.  She can climb
> ramps and stairs occasionally, but she is never able to climb ladders,
> ropes, or scaffolds.  The claimant is able to balance (as that term is
> defined in the Dictionary of Occupational Titles (DOT)), stoop, kneel,
> crouch, and crawl occasionally.  The claimant can tolerate occasional
> exposure to atmospheric conditions, but never in excessive amounts.
> The claimant is able to carry out simple instructions.  She is unable to
> work at a production rate pace, such as on an assembly line.

(R. at 21-25.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform

any past relevant work.  (R. at 25.)  At **Step 5**, considering Plaintiff's age,

education, work experience, and RFC, the ALJ determined that there were jobs that

existed in significant numbers in the national economy that Plaintiff could perform,

such as sorter, general office clerk, and packer.  (R. at 25-26.)  The ALJ therefore

concluded that Plaintiff had not been under a disability, as defined in the Social

Security Act, since July 15, 2015.  (R. at 26-27.)

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

>    **E.    Analysis**

Plaintiff argues, in her motion for summary judgment and reply brief, that

the RFC determination is unsupported by substantial evidence because the "ALJ

failed to weigh the opinion evidence in accordance with the regulations, as she

provided no legitimate rationale for discounting the opinions of all examining and

treating sources."  (ECF No. 12, PageID.1361, 1369-1375; ECF No. 16,

PageID.1410-1413.)  The Commissioner opposes Plaintiff's motion, asserting that

substantial evidence supports the ALJ's decision and that Plaintiff has

demonstrated no error in the ALJ's assessment of the opinion evidence.  (ECF No. 15, PageID.1385-1386, 1389-1409.)

> **1.     On the basis of the arguments presented, Plaintiff has demonstrated no error with the ALJ's assessments of the medical opinions at issue**
>
> **a.     RFC and opinion evidence**

The plaintiff bears the burden of proof at Steps 1-4, including proving his RFC.  *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.") (citing *Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 148 (6th Cir. 1990), and *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987)); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) ("The claimant, however, retains the burden of proving her lack of residual functional capacity.").  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform[.]"  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case.  20 C.F.R. §§ 404.1527(b), 416.927(b).[2]  The

_____

[2] These regulations apply to claims filed before March 27, 2017, like Plaintiff's DIB and SSI claims.

regulations define medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1). ALJs "will consider . . . administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants . . . [,]" but "are not required to adopt any prior administrative medical findings[.]" 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1).

The ALJ generally gives deference to the opinions of a treating source "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Blakley*, 581 F.3d at 408.

> Medical opinions from treating sources about the nature and severity of an individual's impairment(s) are entitled to special significance and may be entitled to controlling weight. If a treating source's medical opinion on an issue of the nature and severity of an individual's impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, the adjudicator must give it controlling weight.

8

S.S.R. 96-8p, 1996 WL 374184, at *7.  In other words, an ALJ "may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quotation marks and citation omitted).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ will consider the following factors when deciding the weight to give to any medical opinion: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency with the record as a whole; and (5) specialization.  20 C.F.R. §§ 404.1527(c), 416.927(c).  Special care must be taken when considering the treating physician's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (if the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements).

However, while an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's medical opinion," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), and "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight[,]" *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 375 F. App'x 543, 550

9

(6th Cir. 2010) (*per curiam*) (internal quotations omitted), there is no *per se* rule that requires a written articulation of each of the six regulatory or "Wilson factors" listed in 20 C.F.R. §§ 404.1527(c), *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010).  In other words, the regulations do not require "an exhaustive factor-by-factor analysis." *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011).

Moreover, the failure to discuss the requisite factors may constitute harmless error: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of [§ 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006) (quoting *Wilson*, 378 F.3d at 547).  *See also Betty v. Comm'r of Soc. Sec.*, No. 15-cv-10734, 2016 WL 1105008, at *4 (E.D. Mich. Feb. 17, 2016), *report and recommendation adopted*, No. 15-CV-10734-DT, 2016 WL 1090554 (E.D. Mich. Mar. 21, 2016).

### b.    Opinion of Dr. Michael Clarke, M.D.

For the reasons that follow, the Court should find that the ALJ did not err in her evaluation of Dr. Clarke's opinion.

10

In a Medical Source Statement dated June 21, 2018, Plaintiff's treating physician, Dr. Clarke, listed her diagnoses as lupus and ADHD, her symptoms as fatigue, hair loss, sun sensitivity, arthralgia, memory loss, pain, concentration and focus problems, and anxiety, and the psychological conditions affecting her physical condition as depression and anxiety.  (R. at 1286-1287 [Exhibit 11F].)  Additionally, he opined that Plaintiff would face a number of functional limitations if placed in a competitive work situation, including: the inability to ambulate during flare-ups; the ability to sit for four hours and stand or walk for two hours in an eight-hour workday; the need to take four thirty-minute breaks each workday due to muscle weakness, pain, and chronic fatigue; the ability to carry ten pounds frequently and 20 pounds occasionally; the ability to occasionally twist, stoop, crouch, and climb; the likelihood of being off-task 25% or more of a typical workday; incapability of even "low-stress" work because of anxiety, ADHD, and poor coping skills; and suffering from good and bad days with the likelihood of being absent more than four days per month.  (R. at 1287-1289 [Exhibit 11F].)

As part of her RFC determination, the ALJ afforded this Medical Source Statement "little weight," stating:

> Michael Clarke, M.D., a treating physician, offered an opinion in June 2018 regarding the claimant's functioning.  (Exhibit 11F).  Dr. Clarke opined that the claimant is able to sit, stand, and walk for a combined total of six hours during an eight-hour workday.  The doctor opined that the claimant requires unscheduled work breaks, is incapable of performing even low stress work, and speculates she would be absent

from work more than four times per month. (*Id*.). Dr. Clarke's statements regarding the claimant's functioning are not supported by the findings at Exhibits 3F, 5F, 9F, and 10F, which have been summarized above. Notably, his statements are inconsistent with his own objective findings. For example, in February of 2018, Dr. Clarke noted the claimant had an anxious mood, but she was also alert and oriented, had normal strength, and had normal cognition, memory, judgment, and thought content. (Exhibit 10F, p. 312). As another example, in April and May of 2018, the claimant appeared anxious, but was alert and oriented, had normal range of motion with no edema or deformity, and had normal cognition, memory, judgment, and thought content. (Id. at 336, 357). The undersigned assigns little weight to Dr. Clark's opinion.

(R. at 24.)

### i. Mere general citation

The Court should be unpersuaded and perplexed by Plaintiff's first assertion that the ALJ erred by discounting Dr. Clarke's opinion with only general citation to Exhibits 3F, 5F, 9F, and 10F in their entirety. (ECF No. 12, PageID.1369-1370; ECF No. 16, PageID.1410-1411.) As was surely obvious to Plaintiff, although the ALJ did make a general reference to these exhibits in the above-quoted paragraph of her hearing decision, she made much more specific references to each later in the same paragraph and elsewhere throughout her decision, and explicitly stated that the referenced exhibits had "been summarized above." (R. at 22-24.) This does not amount to error, as it is appropriate to read an ALJ's decision as a whole. *See Athey v. Comm'r of Soc. Sec.*, No. 13-cv-12528, 2014 WL 4537317, at *4 (E.D. Mich. Sept. 11, 2014); *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir.

2004) ("Because it is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.).

### ii. Logical bridge: physical vs. mental commentary

Next, the Court should reject Plaintiff's argument that the ALJ failed to provide an accurate and logical bridge between the evidence and the result.  (ECF No. 12, PageID.1370-1371; ECF No. 16, PageID.1411-1413.)  Plaintiff bases this assertion on the unsustainable premise that the ALJ's reference to contradictory mental status findings is misplaced because "Dr. Clarke's opinion mainly refers to the physical ramifications of Plaintiff's lupus" (ECF No. 12, PageID.1370), when in fact, as provided above, Dr. Clarke's Medical Source Statement addressed Plaintiff's physical *and* mental symptoms, impairments, and limitations.  Indeed, Dr. Clarke listed concentration and focus problems as well as anxiety among Plaintiff's symptoms (R. at 1286 [Exhibit 11F]), and opined that Plaintiff would be incapable of even "low stress" work as a result of those impairments (R. at 1289 [Exhibit 11F]).  And, although he did not explicitly attribute each to Plaintiff's mental impairments, it can be inferred that Dr. Clarke opined Plaintiff would be off-task for 25% of a typical workday and absent from work more than four days per month on the basis of both her physical and mental impairments.  This is especially true considering Dr. Clarke's statement that Plaintiff's psychological

13

conditions of depression and anxiety affected her physical condition.  (R. at 1286-1287 [Exhibit 11F].)  Thus, a connection does exist between the evidence the ALJ cited in support of her assessment of Dr. Clarke's opinion and the opinion itself.

### iii.  Management of lupus

Finally, Plaintiff's argument that "[i]f the ALJ had evaluated Dr. Clarke's opinion in relation to Plaintiff's impairment and the findings actually related to lupus, she would have found much support for the opinion" (ECF No. 12, PageID.1371-1372), lacks merit.  She asserts that the clinical manifestations of lupus most commonly include fatigue, weight change, fever, rashes, and myalgia, so the ALJ's reference to medical records noting normal range of motion with no edema or deformity are wholly unrelated to her underlying impairment.  (ECF No. 12, PageID.1371-1372.)  However, assuming the accuracy of Plaintiff's assertions regarding the common clinical manifestations of lupus, the Undersigned sees no connection between those manifestations and Plaintiff's challenge to the ALJ's analysis of the symptoms, impairments, and limitations stated in Dr. Clarke's opinion (including joint pain, fatigue, anxiety, and muscle weakness) specifically, which the ALJ addressed at length throughout her decision.  Indeed, beyond the paragraph of the hearing decision quoted above, the ALJ stated:

> The medical evidence of record shows the claimant has some limitations, but it is inconsistent with the claimant's allegations of disability.  Laboratory findings indicated "the probability of [a]n autoimmune disorder."  (Exhibit 3F, p. 31).  The claimant was started

14

on plaquenil and was noted to be *responding "very well."* (Id. at 31). This medication was later discontinued due to side effects, however, Lakshimi Kocharla, M.D., a treating physician, stated that the claimant's autoimmune disorder *should be managed conservatively*. (*Id*. at 38). Throughout most of the relevant period (alleged onset date to present), the claimant has reported diffuse body pain, but musculoskeletal and neurological examination findings have been *unremarkable*. (Exhibits 3F, pp. 43, 45; 5F, pp. 4, 10, 14, 35, 44, 70, 79; 6F, pp. 1-2, 39, 93; 9F, pp. 16, 21; and 10F, pp. 207-208; 223). At times, the claimant had limited range of motion of the lumbar spine. (Exhibit 10F, pp. 156, 163). In August 2017, the claimant had *full strength* in all extremities, normal sensation, normal reflexes, and normal coordination. (*Id*. at 223). In June of 2018, the claimant had a faint malar rash, but normal range of motion in her joints with no evidence of synovitis or tenderness. (Exhibit 9F, p. 21). Additionally, the medical evidence of record demonstrates that the claimant has obesity with body mass index (BMI) measures above 30. (Exhibits 3F, p. 40; 5F, p. 4; and 10F, pp. 280, 292). The undersigned has accounted for the claimant's probable autoimmune disease and her obesity by restricting her to performing sedentary work with the above-stated postural and environmental limitations, and by limiting her pace.

\* \* \*

As noted above regarding the Paragraph B criteria, the medical of evidence does not demonstrate disabling mental health impairments. The evidence indicates periodic findings of anxiety. (Exhibit 10F, pp. 191 and 334). The claimant received her medications from her primary care provider, including Adderall for an assessment of ADHD, and Xanax for anxiety and an adjustment disorder (Exhibit 5F; 10F, p. 324). The majority of mental status examination findings during the relevant period were *unremarkable* (e.g., Exhibits 3F, pp. 43, 45; 5F, pp. 9, 23, 34, 74, 76-77; 6F, pp. 1, 93, 171; and 10F, pp. 61, 77, and 137). On more than one occasion, the claimant refused mental health counseling. (Exhibits 5F, p. 77 and 10F, p. 224). Further, the claimant reported focusing well in college level courses during the relevant period. (Exhibit 5F, p. 71). She reported caring for her children at home and planning a business. (Exhibit 10F, p. 252). The undersigned has accounted for the claimant's anxiety,

15

which affects her ability to concentrate and adapt to stress, by
restricting the claimant to performing simple work and by limiting her
pace. This is consistent with the preponderance of evidence regarding
the claimant's severe mental impairments.

(R. at 22-23 (emphases added).)  And Plaintiff has given me no reason to doubt the

accuracy of the ALJ's references to the record.  *See McPherson v. Kelsey*, 125 F.3d

989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It

is not sufficient for a party to mention a possible argument in the most skeletal

way, leaving the court to . . . put flesh on its bones.") (quotation marks and

citations omitted); *Jones v. Comm'r of Soc. Sec.*, No. 3:12 CV 2986, 2013 WL

4748083, at *8 (N.D. Ohio Sept. 4, 2013) ("[I]t is not the Court's function to

search the administrative record for evidence to support [the plaintiff's] 'argument'

or find law supporting her claims.  This Court does not conduct a *de novo* review

in social security proceedings, and certainly cannot be expected to craft an

argument on [the plaintiff's] behalf.  As such, this assignment of error should be

deemed waived.") (quotation marks and citations omitted).  *See also Jordan*, 548

F.3d at 423 ("The claimant, however, retains the burden of proving her lack of

residual functional capacity.").  Moreover, the ALJ provided multiple reasons, as

quoted above, for concluding that Plaintiff's lupus is less debilitating than Dr.

Clarke opined.  The ALJ noted conservative treatment, Plaintiff's good response to

medications, and her refusal of treatment, to say nothing of multiple cited instances

16

of unremarkable or normal clinical findings.  These would appear to be legitimate

considerations, and Plaintiff has not shown otherwise, either generally or under the

circumstances.  *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015)

(conservative treatment); *Maloney v. Comm'r of Soc. Sec.*, 480 F. App'x 804, 808-

09 (6th Cir. 2012) (to discount a treating physician's opinion, an ALJ may validly

consider that the treatment provided to the claimant is routine and conservative);

*Collins v. Comm'r of Soc. Sec.*, No. 2:18-cv-53, 2019 WL 4645737, at *8 (W.D.

Mich. Aug. 30, 2019), *report and recommendation adopted*, No. 2:18-CV-53, 2019

WL 4643807 (W.D. Mich. Sept. 24, 2019))((responded well to medication).

Accordingly, on the basis of the arguments presented, the Court should find

no error in the ALJ's analysis of Dr. Clarke's opinion.

### c. Opinions by consultative psychologist Daniel Walberer, Ed.D., and state agency non-examining physicians

Plaintiff's challenges to the opinions of consultative psychologist Dr.

Walberer and state agency non-examining physicians are even more perfunctory

and equally unpersuasive.

Although Plaintiff summarized Dr. Walberer's opinion (R. at 793-803

[Exhibit 7F]) in the facts section of her summary judgment motion (ECF No. 12,

PageID.1364-1365), she largely declined to address the substance of that opinion,

or of the ALJ's analysis of that opinion, in the argument section of her motion,

only cursorily stating that the RFC finding is "remarkably inconsistent" with Dr. Walberer's opinion, without any elaboration.  (ECF No. 12, PageID.1372.)  Thus, Plaintiff has waived any argument to that effect.  *See McPherson*, 125 F.3d at 995-96.  And Plaintiff's argument that the ALJ erred by discounting Dr. Walberer's opinion with only a general reference to Exhibits 3F, 5F, 6F, and 10F (ECF No. 12, PageID.1372-1373), fails for the same reasons described above.  Although the ALJ did make a general reference to these exhibits in her assessment of Dr. Walberer's opinion, she addressed the details of the medical records in each of those exhibits throughout her hearing decision.  (R. at 19-25.)[3]  Again, this alone does not demonstrate error, as it is appropriate to read an ALJ's decision as a whole.  *See Athey*, 2014 WL 4537317, at *4; *Rice*, 384 F.3d at 370 n.5 ("Because it is proper to read the ALJ's decision as a whole . . . it would be a needless formality to have the ALJ repeat substantially similar factual analyses" in different parts of the decision.).

---

[3] *See, e.g.,* R. at 20-22, citing: Exs. 3F, 5F, 6F, 8F and 10F for mental examinations that "were unremarkable throughout 2016 and 2017 without evidence of significant deficits" in the area of mental functioning for "performing simple calculation tasks"; Ex. 10F, pp. 189 and 252 for "claimant reported being able to handle activities of daily living and perform school work"; Ex. 5F, pp. 9, 23 for "normal judgment"; Ex. 5F, p. 14 for normal appearance; Ex. 7F, p. 2 for "appropriately groomed, drove herself to the appointment, and had good manners"; Ex. 7F for unremarkable psychological consultative examination; and, multiple specific page citations to Exs. 3F, 5F, 6F and 10F for unremarkable neurological examinations.

Further, notwithstanding Plaintiff's citations to cases addressing the importance of an agency examiner's opinion when a claimant suffers from mental health impairments (*see* ECF No. 12, PageID.1373), the Undersigned notes that though an ALJ should consider the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c) when evaluating any medical opinion, the opinion of a consultative examiner is entitled to no special deference like that of a treating physician. *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). Plaintiff emphasizes that the "report of a consultative examiner may constitute substantial evidence to support a decision[,]" citing *Hall v. Bowen*, 837 F.2d 272, 276 (6th Cir. 1988). (ECF No. 12, PageID.1372.) This is true, but limited and unremarkable. Indeed, it "may." And Plaintiff's failure to voice a developed challenge the ALJ's findings with regard to Dr. Walberer's opinion relieves the Court of any duty to conduct its own examination of those findings in relation to the factors listed in 20 C.F.R. §§ 404.1527(c), 416.927(c).

Finally, Plaintiff's cursory assertion that there is no rationale that would support favoring the opinions of state agency non-examining physicians over the opinion of Dr. Clarke (*see* ECF No. 12, PageID.1374) deserves minimal scrutiny by the Court. As before, the argument is waived as it is undeveloped and provides no substantive comparison between those opinions and that of Dr. Clarke, or between the ALJ's assessment of those opinions and that of Dr. Clarke. *See*

19

*McPherson*, 125 F.3d at 995-96.  While Plaintiff is correct that "a reviewing court [is not required] to hunt for scraps of rationale" in the ALJ's opinion (ECF No. 12, PageID.1373), a reviewing court is similarly not required to conduct such a hunt for specific evidence which might support an appellant's capacious argument. And, even if evidence "that would have supported an opposite conclusion" were discovered in such a search, "if substantial evidence supports the ALJ's decision, this Court defers to that finding . . . .'" *Blakley*, 581 F.3d at 406 (citation omitted).

Accordingly, on the basis of the arguments presented, the Court should find no error in the ALJ's analysis of these opinions.

### F.    Conclusion

Plaintiff has the burden of proof on statements of error.  *Walters*, 127 F.3d at 529 ("[D]uring the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five.").  Plaintiff has not shown legal error that would upend the ALJ's decision.  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 12), **GRANT** Defendant's motion for summary judgment (ECF No. 15), and **AFFIRM** the Commissioner of Social Security's decision.

### III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.

Dated:  February 11, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

21